HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| M.K.L., by and through her parents, J.K. and R.L.; and J.K. and R.L., individually and on their own behalf,<br><br>Plaintiffs,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, KING COUNTY, STATE OF WASHINGTON, also known as SEATTLE PUBLIC SCHOOLS; NATHAN HALE HIGH SCHOOL; and DR. WILLIAM JACKSON, in his individual capacity and on behalf of his marital community,<br><br>Defendants. | Case No. 2:25-cv-2334-RSM<br><br>DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF PHILIP LAZARUS<br><br>NOTE ON MOTION CALENDAR: DECEMBER 1, 2026<br><br>ORAL ARGUMENT REQUESTED |



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. RELEVANT BACKGROUND .......... 2

A. Dr. Lazarus's School-Psychology Experience Includes School Safety, Student Support, and Crisis Intervention. .......... 2

B. Dr. Lazarus Reviewed the Underlying School Records and Assessed the Nathan Hale Administration's Selection and Escalation of Interventions. .......... 2

C. Dr. Lazarus Separately Assessed M.K.L.'s Reported Educational Progress and Prospects. .......... 4

III. ARGUMENT .......... 5

A. Dr. Lazarus's Professional Assessment of the Reasonableness of the District's Response Falls Well Within a Permissible Subject of Expert Testimony. .......... 6

B. Dr. Lazarus's Expertise and Qualifications Match the Evaluation He Made of the District's Response. .......... 7

C. Dr. Lazarus Identifies the Standards that Form the Foundation of His Opinions and Explains Their Application to the District's Response. .......... 9

D. Dr. Lazarus Assessed the District's Response in the Context of the Events that Occurred and the Information Available to Nathan Hale Administrators. .......... 10

E. Dr. Lazarus's Assessment of M.K.L. Rests on Specific Evidence of Her Later Progress. .......... 11

F. The District Will Produce the Additional Material Referenced by Dr. Lazarus. .......... 12

IV. CONCLUSION .......... 12



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

# TABLE OF AUTHORITIES

**Page**

## Table of Cases

*Collier v. Bradley Univ.*,
113 F. Supp. 2d 1235 (C.D. Ill. Aug. 31, 2000) .......... 8

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 5, 8

*Doe v. Haverford Sch.*,
No. 24-618, 2025 WL 3008138 (E.D. Pa. Oct. 27, 2025) .......... 10

*Easton v. Asplundh Tree Experts, Co.*,
No. C16-1694RSM, 2017 WL 4005833 (W.D. Wash. Sept. 12, 2017) .......... 10

*Halcomb v. Washington Metro. Area Trans. Authority*,
526 F.Supp.2d 24 (D.D.C. Dec. 7, 2007) .......... 7

*Securities & Exchange Comm'n v. SBB Research Grp.*,
No. 19-cv-6473, 2024 WL 4894315 (N.D. Ill. Nov. 26, 2024) .......... 8

*Self v. Perspecta Enter. Sols., LLC,*
2023 WL 2025238 (S.D. Cal. Feb. 15, 2023) .......... 8

*Snead v. Wright*,
625 F. Supp. 3d 936 (D. Alaska Sept. 7, 2022) .......... 8

*T.B. by & through Bursch v. Indep. Sch. Dist. 112*,
619 F. Supp. 3d 886 (D. Minn. Aug. 4, 2022) .......... 6

*Young v. Pleasant Valley Sch. Dist.*,
267 F.R.D. 163 (M.D. Pa. April 12, 2010) .......... 6, 7, 10

## Rules

Fed. R. Evid. 702 .......... 5, 6, 7, 8, 9, 10

Fed. R. Evid. 704(a) .......... 7



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

**Other Authorities**

Fed. R. Evid. 702 advisory committee's note to 2000 amendment ........................................ 5

Fed. R. Evid. 702 advisory committee's note to 2023 amendment ........................................ 5



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

## I. INTRODUCTION

Defendant Seattle School District No. 1 (the "District") designated Dr. Philip Lazarus as an expert concerning school-based interventions and plaintiff M.K.L.'s educational progress and prospects. Dr. Lazarus is an accomplished psychologist with over 30 years of experience in school psychology, psychological assessment, counseling, and consultation. His opinions address the reasonableness of the Nathan Hale administration's response to antisemitism during the 2023–2024 school year and M.K.L.'s subsequent educational capacity. *See* Dkt. 82, Ex. A (Expert Report of Philip Lazarus, Ph.D. (Oct. 23, 2026)), at 8-12.

Dr. Lazarus's expertise and experience include extensive knowledge regarding school safety, crisis prevention and intervention, student mental health, academic and behavioral interventions, and the development of safe and supportive school environments. He directed Florida International University's School Psychology Training Program from 1978 to 2021, served as president of the National Association of School Psychologists, and authored or coedited books addressing safe schools, student mental health, and school crisis intervention. Dkt. 82, Ex. A, app. B; Thomsen Decl., Ex. 1.

Despite his considerable experience on the precise topics at issue in this case, Plaintiffs seek exclusion of Dr. Lazarus's testimony in its entirety, arguing that he offers conclusions without professional or methodological analysis. Dkt. 81 at 1, 4–7. His report, however, quotes relevant harassment, intimidation and bullying policy ("HIB") provisions, identifies a range of school interventions, and explains why particular responses and their progression were reasonable, based on his decades of experience. Dkt. 82, Ex. A at 9–11. His deposition further explains the purposes and operation of specific interventions. Dr. Lazarus's opinions—developed based on a thorough review of the underlying records and evidence and his decades of experience—are the quintessential type of expert testimony that would be beneficial to the trier of fact. Plaintiffs' motion should be denied.



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

## II. RELEVANT BACKGROUND

### A. Dr. Lazarus's School-Psychology Experience Includes School Safety, Student Support, and Crisis Intervention.

Dr. Lazarus holds a doctorate in counseling psychology, with a specialization in school psychology, and is licensed in Florida as both a psychologist and a school psychologist. Dkt. 82, Ex. A, app. B.

Dr. Lazarus directed Florida International University's School Psychology Training Program from 1978 to 2021. *Id.* His responsibilities included supervising school-psychology interns and practicum students, consulting, directing research, and teaching graduate courses in academic and behavioral interventions, crisis counseling, psychoeducational assessment, and family-school consultation. *Id.* He also served as president of the National Association of School Psychologists during 2011–2012. *Id.* His experience includes more than 30 years of clinical practice. *See* Dkt. 82, Ex. B (Dr. Lazarus deposition) at 37:18.

Dr. Lazarus is also an accomplished author and has written a number of textbooks about school leadership and management. These subjects are at issue in this case. His publications include *Leadership for Safe Schools: The Three Pillar Approach to Supporting Students' Mental Health* (2023), *Creating Safe and Supportive Schools and Fostering Students' Mental Health* (2017), and the coedited volume *Best Practices in School Crisis Prevention and Intervention* (2002). Dkt. 82, Ex. A, app. B; Thomsen Decl., Ex 1. His teaching, clinical practice, and publications concern the purposes and uses of school-based interventions, including counseling support, educational programming, and crisis response. *See* Dkt. 82, Ex. A.

### B. Dr. Lazarus Reviewed the Underlying School Records and Assessed the Nathan Hale Administration's Selection and Escalation of Interventions.

Defendants retained Dr. Lazarus to assess the reasonableness of the response of the District, Nathan Hale High School, Principal William Jackson, and other administrative personnel to allegations of antisemitic conduct and harassment involving M.K.L. during the



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

2023–2024 school year. Dkt. 82, Ex. A at 1.

Dr. Lazarus reviewed deposition testimony, contemporaneous communications, investigative materials, discovery responses, and District policies and procedures to assess the information available to administrators, the interventions they selected, and the progression of the response over the school year. *Id.* at 1, 7–11 & app. A. His sources included testimony from M.K.L., her parents, Dr. Jackson, Nathan Hale Assistant Principals Michaela Steward and Dr. Jessica Proctor, teacher Erin Lynch, and District investigative personnel. Dkt. 82, Ex. A, app. A.

In assessing the progression of the District's response, Dr. Lazarus traced the response from teacher Ms. Shira Brewer's November 2023 outreach and Dr. Jackson's community message condemning antisemitism, through the April 2024 meeting with Jewish families and arrangements for Project Shema staff training. Dkt. 82, Ex. A at 3–5. He then considered the security escort and safety planning following the May 22, 2024 confrontation, the family's formal complaint, and the June 2024 referral for an intake investigation. *Id.* at 5–7. He also examined incident-specific responses, including the administration's intervention concerning the Muslim Student Association Instagram messages. *Id.* at 4.

Based on that exhaustive review, Dr. Lazarus concluded that "[t]he Nathan Hale administration's response to antisemitism on campus was reasonable." *Id.* at 8. He evaluated the District's response against its policies and procedures, school-administration practices, and professional judgment. *Id.* at 7. He described six intervention categories: informal conversations, counseling-based support, educational programming, restorative approaches, formal discipline, and formal HIB or civil-rights investigation. *Id.* at 10. He then explained that, in his assessment, interventions should escalate proportionately as the "severity, frequency, or clarity of conduct increases," and applied that principle to the sequence of family engagement, training, safety planning, and investigative referral he described. *Id.* at 10–11.



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

Applying the provisions in the District's HIB policy, Dr. Lazarus explained why he considered incident tracking appropriate for reports of conduct not specifically directed at M.K.L., while more specific reports enabled administrators to identify and address the student involved. *Id.* at 9–10. For example, he explained that Nathan Hale Vice Principal Ms. Steward used information about the Muslim Student Association's Instagram messages to identify the student involved and address the conduct. *Id.* at 10. He also distinguished individual discipline from school-wide measures: an unidentified student could not be disciplined, but educational programming, community messaging, and other school-wide responses remained available. *Id.* at 11.

Dr. Lazarus further explained in his deposition the various intervention categories that a school's administration can take. He classified the Nathan Hale administration's conversation with the student who drew swastikas as an informal intervention and testified that the conduct stopped after the conversation. Dkt. 82, Ex. B at 118:1–15. He described teacher Ms. Brewer's supportive relationship with M.K.L. and her connections with supportive staff and the Jewish Student Union in discussing counseling-based support. *Id.* at 120:2–23; Dkt. 82, Ex. A at 10. For educational intervention, he discussed Project Shema's faculty education and bystander instruction, explaining the latter's role in responding to bullying. Dkt. 82, Ex. B at 123:10–23. Thus, in nearly all instances, Dr. Lazarus tied the District's response to a specific intervention category.

## C. Dr. Lazarus Separately Assessed M.K.L.'s Reported Educational Progress and Prospects.

Dr. Lazarus separately assessed M.K.L.'s educational trajectory using information reported in her deposition and her parents' depositions. He identified a reported 3.3 grade-point average, current coursework, leadership in student organizations, employment, and college plans, and attributed the grade-point average and coursework information to testimony from M.K.L. and her mother. Dkt. 82, Ex. A at 11–12; Ex. B at 148:17–149:3,



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

154:1–6. On that record-based assessment, he concluded that she appeared to be making significant educational progress and was "well poised for a successful future," and stated that he saw no information in the materials provided that her Nathan Hale experience would thwart her educational and career aspirations. *Id.* Ex. A at 11–12. This was an assessment of reported educational functioning and prospects, not a personal clinical examination or an independent mental-health opinion. *Id.* at 12; Ex. B at 151:6–13, 156:10–17.

## III. ARGUMENT

Under Federal Rule of Evidence 702, a witness qualified by knowledge, skill, experience, training, or education may offer expert testimony if the proponent demonstrates to the Court that it is more likely than not that the testimony will help the trier of fact, is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts. Fed. R. Evid. 702(a)–(d). The Court must ensure that expert testimony is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). Cross-examination is an appropriate means of testing shaky but admissible evidence. *Id*. at 596.

Rule 702 permits experience-based testimony and testimony explaining general professional principles, provided the expert connects that knowledge to the subject on which the jury needs assistance. Fed. R. Evid. 702 advisory committee's note to 2000 amendment. The Court must determine whether the proposed testimony has a sufficient basis and reflects reliable application, but the inquiry does not demand perfection or require exclusion merely because the parties dispute factual premises. *Id.*, advisory committee's note to 2023 amendment. Here, that inquiry should focus on Dr. Lazarus's knowledge of and explanation of school interventions and his application of those principles to the responses identified in his report. Dr. Lazarus easily meets the threshold for admissibility under Rule 702.



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

### A. Dr. Lazarus's Professional Assessment of the Reasonableness of the District's Response Falls Well Within a Permissible Subject of Expert Testimony.

Plaintiffs' request for wholesale exclusion should be evaluated by distinguishing professional assessments of educational practices (which are permissible) from legal conclusions and unsupported factual judgments (which are impermissible). Courts have permitted experts to evaluate the reasonableness of a school district's response to reported misconduct while prohibiting opinions that merely invoke legal standards. This distinction is important because Dr. Lazarus's opinions fall well within the former and not the latter.

In *T.B. by and through Bursch v. Independent School District 112*, 619 F. Supp. 3d 886, 893-94 (D. Minn. Aug. 4, 2022), the plaintiffs argued that the district's expert offered opinions within a lay juror's understanding, lacked relevant expertise, and employed an insufficient methodology. The court nevertheless permitted the expert to testify about whether the district acted reasonably in response to known allegations of discrimination and whether its policies and practices were adequate. *Id.* The court relied on the expert's extensive experience advising schools and conducting and supervising misconduct investigations, highlighting that "in cases involving social sciences, where 'the research, theories, and opinions cannot have the exactness of 'hard' science methodologies,' the [c]ourt should look to other indicia of reliability, such as professional experience, education, training, and observations. *Id.* at 890; 894. Just as in *T.B.*, Dr. Lazarus's school-psychology experience and his analysis of the identified interventions provide more than ample foundation for evaluating his testimony under Rule 702. Dkt. 82, Ex. A at 9–11 & app. B. Dr. Lazarus's expert testimony about the adequacy and reasonableness of a school's response will also assist the jury without impermissibly dictating the ultimate legal conclusion.

Similarly, the court in *Young v. Pleasant Valley School District,* 267 F.R.D. 163, 166–67 (M.D. Pa. April 12, 2010), permitted an education expert to assess whether a principal's communications were appropriate in the context of educational policy and



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

relevant to a retaliation claim. The court rejected the contention that the expert's record-based application of educational expertise necessarily amounted to subjective belief or unsupported speculation. *Id.* at 167. The court also recognized that an otherwise admissible opinion is not objectionable merely because it embraces an ultimate issue, while preserving objections to particular legal conclusions for trial. *Id.*; Fed. R. Evid. 704(a). As in *Young*, Dr. Lazarus applies his professional experience to the record to assess the school's response, including its use of supportive, educational, and investigative measures. Dkt. 82, Ex. at 9-11.

*Halcomb v. Washington Metropolitan Area Transit Authority,* 526 F.Supp.2d 24, 26-28 (D.D.C. Dec. 7, 2007) illustrates how courts distinguish admissible professional testimony from statements or testimony requiring limitations. In *Halcomb,* the court emphasized that there "is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards." *Id.* at 27 (citation omitted). However, the court explained that to the extent particular opinions stray into legal conclusions, are outside relevant expertise, or otherwise tell the jury what result to reach, those opinions will be excluded. *Id.* Accordingly, the appropriate remedy is often targeted limitations on particular opinions rather than exclusion of otherwise admissible professional-standards testimony. Consistent with *Halcomb,* Dr. Lazarus seeks only to explain and assess the school's interventions. Any concerns about particular statements Dr. Lazarus may make can be addressed, if required, through targeted limits imposed upon him at trial rather than wholesale exclusion of his testimony.

**B. Dr. Lazarus's Expertise and Qualifications Match the Evaluation He Made of the District's Response.**

Dr. Lazarus's qualifications directly concern the student supports and school-based interventions addressed in his report. He directed Florida International University's School Psychology Training Program from 1978 to 2021, supervised school-psychology interns, and taught academic and behavioral interventions, crisis counseling, and family-school



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

consultation. Dkt. 82, Ex. A, app. B. He also served as president of the National Association of School Psychologists and authored or coedited books including *Leadership* for *Safe Schools* (2023), *Creating Safe and Supportive Schools and Fostering Students' Mental Health* (2017), and *Best Practices in School Crisis Prevention and Intervention* (2002). *Id.* That experience provides a subject-specific foundation for explaining how supportive staff relationships, educational programming, and crisis-response measures function as school interventions. *See id.*; Dkt. 82 Ex. A at 9–11.

Plaintiffs focus on the fact that Dr. Lazarus has not served as a school administrator or supervised student harassment investigations. Dkt. 81 at 5. But Rule 702 recognizes qualification through knowledge, skill, experience, training, or education, not solely through service in a particular job. "An expert does not need to work for a particular industry in order to provide helpful testimony." *Securities & Exchange Comm'n v. SBB Research Grp.,* Case No. 19-cv-6473, 2024 WL 4894315, at *3 (N.D. Ill. Nov. 26, 2024). And to the extent a party argues that an expert lacks the requisite narrowly specialized experience, "the way to test his expertise is not at the threshold in a *Daubert* motion, but at trial through opposing evidence or cross-examination." *Id.* Exclusion of expert testimony is "the exception rather than the rule." *Snead v. Wright,* 625 F. Supp. 3d 936, 939 (D. Alaska Sept. 7, 2022).

Plaintiffs' reliance on *Collier v. Bradley Univ.,* 113 F. Supp. 2d 1235 (C.D. Ill. Aug. 31, 2000), and *Self v. Perspecta Enterprises Solutions, LLC,* No. 21-CV-01230-AJB-MSB, 2023 WL 2025238 (S.D. Cal. Feb. 15, 2023), also is unpersuasive. *See* Dkt. 81 at 5. Unlike the expert in *Collier,* Dr. Lazarus *does have* experience evaluating whether a school's administration follows school policies. And the unremarkable proposition in *Self*—that jurors can compare written policy requirements with the evidence—does not establish that they need no professional assistance understanding the purpose, suitability, or limitations of school-based interventions. Dr. Lazarus does more than recite District policies. He explains the professional significance of the school's responses and assesses them within the



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

intervention framework identified in his report. Dkt. 82, Ex. A at 9–11. Whether each resulting opinion reflects a reliable application of that framework is a separate Rule 702 inquiry, not a basis for disregarding his relevant qualifications.

### C. Dr. Lazarus Identifies the Standards that Form the Foundation of His Opinions and Explains Their Application to the District's Response.

Plaintiffs' assertion that the report "does not quote a single operative provision" overlooks his report's substantive analysis. Dkt. 81 at 4. Dr. Lazarus quotes the District's HIB policy concerning incident tracking and circumstances in which further action may be unnecessary, then contrasts generalized reports with specific information that enabled administrators to identify a student and address the Muslim Student Association Instagram messages. Dkt. 82, Ex. A at 9–10. He also identifies a continuum of interventions, ranging from informal measures to disciplinary and investigative measures. *Id.* at 10. He explains that responses should escalate proportionately as the severity, frequency, or clarity of conduct increases and applies that principle to the progression of measures that the District adopted. *Id.* at 10–11. The report thus supplies both a framework and an explanation connecting that framework to the District's specific responses.

His deposition further establishes the connection between the standards he applied and the opinions he reached. He described the administration's conversation with the student who drew swastikas, explained its emphasis on the harm to Jewish students, and identified the reported cessation of the conduct as evidence of a successful informal intervention. Dkt. 82, Ex. B at 118:1–15. He discussed Ms. Brewer's supportive relationship with M.K.L. as a counseling-based measure and explained the role of faculty education and teacher bystander instruction in addressing bullying. *Id.* at 120:2–23, 123:10–125:2. These explanations identify the purpose, operation, and, in the swastika example, the result of specific measures that the District undertook. His opinions provide professional analysis and more than just a mere recital of the underlying events.



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

Plaintiffs' citation in isolation to phrases he used such as "gestalt" and "reasonable to me" does not account for the explanation that Dr. Lazarus provides. Dkt. 81 at 4, 7. His testimony must be assessed alongside the reasoning in his report and his explanations of specific interventions, rather than reduced to one-word characterizations. His assessment is helpful because he is candid about the scope of the measures he evaluated. He addressed steps toward safety planning—not the adequacy of a completed plan—and he explained constraints on disciplining unidentified students—without suggesting that all investigative options were unavailable. Dkt. 82, Ex. B at 71:18–25, 94:7–18, 95:9–18, 96:2–97:7; Ex. A at 11. These distinctions help the trier assess what Dr. Lazarus actually concluded without reading more into his opinions.

Plaintiffs misplace their reliance on both *Easton v. Asplundh Tree Experts, Co.*, No. C16-1694RSM, 2017 WL 4005833, at *4–5 (W.D. Wash. Sept. 12, 2017), and *Doe v. Haverford School*, No. 24-618, 2025 WL 3008138, at *9 (E.D. Pa. Oct. 27, 2025). *See* Dkt. 81 at 4–5. Unlike those matters, the District is not asking the trier of fact to take Dr. Lazarus's "word on the veracity of his conclusions" or merely relying "upon my experience in this space." Rather, Dr. Lazarus identifies the interventions, explains their professional purposes, and connects them to the actual record. As *Young* recognizes, educational expertise may support a record-based assessment of school conduct. 267 F.R.D. at 167. Here, the identified principles and concrete applications that Dr. Lazarus provides provide ample foundation for admitting his professional assessment under Rule 702.

**D. Dr. Lazarus Assessed the District's Response in the Context of the Events that Occurred and the Information Available to Nathan Hale Administrators.**

Plaintiffs challenge Dr. Lazarus's discussion of competing administrative demands and the students' motives during the May 22 incident. Dkt. 81 at 8–9. His assessment, however, considers that incident within the broader sequence of reported events and administrative responses during the 2023–2024 school year. The report describes



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

administrators' competing responsibilities for student safety, discipline, staff supervision, and overlapping civil-rights concerns, including free-expression and school-safety issues surrounding the November walkout. Dkt. 82, Ex. A at 9–10. It evaluates the response against the information available at the time and the range of investigative measures available to school personnel to assess what actions a reasonably prudent school administrator would have taken under those circumstances. *Id.* at 7, 9–11.

When placed in context, Dr. Lazarus is not characterizing the students' motives or trying to excuse the District's inaction because of competing demands on its administrators. Rather, he explains why he considered the school's responses reasonable in light of the information and circumstances that the administrators faced at the time. *Id.* at 9–11.

**E. Dr. Lazarus's Assessment of M.K.L. Rests on Specific Evidence of Her Later Progress.**

Dr. Lazarus based his Opinion No. 2 on M.K.L.'s academic performance and active participation in school and other activities. He considered her 3.3 grade-point average, strenuous coursework, leadership positions, after-school employment, and college applications. Dkt. 82, Ex. A at 11–12. At his deposition, he also identified M.K.L.'s and her mother's testimony as the sources for her grades and coursework. *Id.,* Ex. B at 148:17–149:3, 154:1–6. He explained that her academic performance reflected educational progress and that her willingness to consider out-of-state colleges was consistent with her independence. *Id.,* Ex. A at 11–12. His conclusion thus rests on identified evidence from M.K.L. and her mother, rather than speculation about a student whose circumstances he had not reviewed.

The District is offering this testimony to explain Dr. Lazarus's assessment of M.K.L.'s educational progress and prospects, not to establish that her experiences caused no psychological injury. His opinions are simply the inverse of those that Plaintiffs themselves hope to offer from their own expert. Again, Dr. Lazarus does not go beyond his expertise, as



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

he disclaimed an independent mental-health opinion and an opinion concerning the effectiveness of subsequent interventions. Dkt. 82, Ex. B at 155:6–156:23.

The relevant question is what M.K.L.'s reported academic performance and activities reveal about her subsequent educational progress. Dr. Lazarus considered those facts together, drawing on his school-psychology experience to assess her coursework, academic achievement, leadership, and independence. Dkt. 82, Ex. A at 11–12 & app. B. Dr. Lazarus's educational assessment will assist the jury in evaluating the evidence concerning her trajectory and is entirely appropriate.

### F. The District Will Produce the Additional Material Referenced by Dr. Lazarus.

Plaintiffs separately seek exclusion of Dr. Lazarus based on allegedly unproduced AI research. Dkt. 81 at 2 n.2. Plaintiffs overstate the issue. At his deposition, Dr. Lazarus merely testified that he used AI to gather background information about the November pro-Palestine rally and student participation, not to generate his report. Dkt. 82, Ex. B at 12:21–13:15. Even so, the District will supplement the productions related to Dr. Lazarus and will produce the AI results Dr. Lazarus obtained.

## IV. CONCLUSION

Plaintiffs' motion overreaches in trying to exclude the testimony of a prominent and highly experienced expert about school practices. Dr. Lazarus's report and the opinions it contains are anchored in relevant policy provisions, his experience and training, and his thorough review of the underlying evidence and deposition testimony. The Court should deny Plaintiffs' motion.



BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Avenue, Suite 5000
Seattle, WA 98101
206-600-6650

*We certify that this response contains 3,688 words in compliance with the Local Civil Rules.*

DATED: November 25, 2026.

BRYAN CAVE LEIGHTON PAISNER LLP

By: *s/ Randall T. Thomsen*
Randall T. Thomsen, WSBA #25310
Michelle Buhler, WSBA #16235
Elisabeth Read, WSBA #59762

1201 Third Avenue, Ste. 5000
Seattle, WA 98101
Tel: 206-600-6650
randall.thomsen@bclplaw.com
michelle.buhler@bclplaw.com
elisabeth.read@bclplaw.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I declare that I am employed by the law firm of Bryan Cave Leighton Paisner LLP, am a citizen of the United States of America, a resident of the state of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein. I caused a true and correct copy of the foregoing document to be served on the person(s) listed below in the manner indicated:

| | |
|---|---|
| Seth A. Rosenberg<br>Peter Hawkins<br>Joseph Gehrke<br>Seattle Litigation Group, PLLC<br>1215 4th Avenue, Suite 1100<br>Seattle, WA 98161<br>seth@seattlelitigation.com<br>peter@seattlelitigation.com<br>joe@seattlelitigation.com<br>Staff:<br>lalaniz@seattlelitigation.com<br>ashleigh@seattlelitigation.com<br><br>*Attorneys for Plaintiffs* | ☐ Via Hand Delivery<br>☐ Via USPS Mail<br>☐ Via Facsimile<br>☑ Via Email<br>☑ Via ECF |
| Adam S. Paris<br>Mark A. Popovsky<br>Jessica M. Klein<br>David R. Skoler<br>Josiah E. Himmelman<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, NY 10004<br>Tel: 212-558-4000<br>parisa@sullcrom.com<br>popovskym@sullcrom.com<br>kleinj@sullcrom.com<br>skolerd@sullcrom.com<br>himmelmanj@sullcrom.com<br>Staff:<br>bloomc@sullcrom.com<br><br>*Attorneys for Plaintiffs* | ☐ Via Hand Delivery<br>☐ Via USPS Mail<br>☐ Via Facsimile<br>☑ Via Email<br>☑ Via ECF |

DATED: November 25, 2026

*s/ Luis Gama*
Luis Gama, Legal Practice Assistant